USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4-14-2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
GERARDO SANCHEZ,

        Petitioner,      15-cv-9957 (PKC) (AJP)

  -against-

               ORDER ADOPTING REPORT
               AND RECOMMENDATION

JOHN COLVIN,

        Respondent.
----------------------------------------------------------x

CASTEL, U.S.D.J.

    On December 22, 2015, Gerardo Sanchez, who represents himself *pro se*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. 1.) This Court referred the Petition to Magistrate Judge Andrew J. Peck. (Dkt. 14.) On October 7, 2016, Magistrate Judge Peck issued a Report and Recommendation (the "R & R") recommending that the habeas petition be denied. (Dkt. 22.) On November 7, 2016, Sanchez filed objections to the R & R. (Dkt. 24.) For reasons to be explained, the Court adopts the thorough and well-reasoned R & R in its entirety.

BACKGROUND.

    On November 21, 2009, Sanchez fatally stabbed a subway passenger during a fight over a seat. (R & R at 1.) Sanchez was arrested on the train and indicted on December 4, 2009 for second degree murder. (Id.) He ultimately pled guilty to first degree manslaughter before Justice Richard Carruthers of the Supreme Court, New York County, for which he was sentenced to a term of imprisonment of twenty-five years. (Id. at 1, 4.) Sanchez filed a *pro se* C.P.L. § 440.10 motion to vacate the judgment on June 23, 2013. (Id. at 4.) Justice Carruthers denied Sanchez's § 440.10 motion on November 27, 2013. (Id. at 7.) On July 20, 2014,

Sanchez sought an extension of time for leave to appeal from Justice Carruthers' order, which the First Department denied on November 25, 2014. (Id.) The First Department upheld Sanchez's conviction on direct appeal on June 17, 2014. (Id. at 7-8.) The New York Court of Appeals denied leave to appeal on August 29, 2014. (Id. at 8.) Sanchez filed his *pro se* federal habeas corpus petition on December 22, 2015. (Dkt. 1.)

There is evidence in the record suggesting that Sanchez had a history of mental illness. Sanchez was hospitalized from January 29, 2004 through February 2, 2004, and again from February 14, 2006 through February 27, 2006 for symptoms including depression, paranoia, auditory hallucinations and suicidal ideation. (R & R at 4.)

Sanchez was evaluated for psychological disorders by several different medical professionals between the time of his arrest and his guilty plea. Shortly after Sanchez's arrest he was admitted to Bellevue Hospital's psychiatric unit and placed on suicide watch. (Id.) On November 25, 2009, he was given a psychological evaluation, at which he presented as disoriented with passive self-injurious ideation and described problems regarding mood as well as loss of sleep and appetite. (Id.) "He endorsed almost every psychotic symptom presented to him, including highly atypical problems (e.g., seeing a gigantic Native American at night and possessing the ability to smell things that enable him to predict the future)," as well as "hearing a low tone or whisper," and receiving messages from God that "it's all going to end." (Id. at 4-5.) The treatment team found that Sanchez's claims were inconsistent with their behavior observations, that Sanchez did not exhibit a disorganized thought process, and that he had good reality testing. (Id. at 5.)

On December 8, 2009, Sanchez superficially cut himself in the neck with a paper clip, though following the incident he stated that he "didn't want to die." (Id.)

On January 4, 2010, Sanchez was evaluated by Dr. Steven Konrad of Bellevue Hospital Center and diagnosed with an unspecified mood disorder. (Id.) Sanchez presented as calm and cooperative with sadness, anxiety, and passive suicidal ideation, and endorsed both visual and auditory hallucinations. (Id.)

On January 5 and 19, 2010, Sanchez was diagnosed with mood disorder, and on May 6 and July 9, 2010, with schizoaffective disorder. (Id.)

On March 21, 2011, clinical psychologist Barry Rosenthal issued an evaluation of Sanchez, finding, among other things, no evidence of disordered thinking. (Id. at 6.) Dr. Rosenthal diagnosed Sanchez with polysubstance dependence and adjustment disorder with mixed anxiety and depression, as well as personality disorder not otherwise specified. (Id. at 7.) However, Sanchez reported that his prescribed medication prevented further hallucinations. (Id. at 6.)

DISCUSSION.

In reviewing an R & R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The Court conducts a *de novo* review of the R & R to the extent Sanchez raises an objection. Id. In order to establish his entitlement to federal habeas relief, Sanchez must make a showing that the trial court's actions were contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. See Williams v. Taylor, 529 U.S. 362, 402-13 (2000) (applying 28 U.S.C. § 2254(d)(1)).

    I.    The R & R's Principal Conclusions and Reasoning:

In his Petition, Sanchez raised several objections to the state court proceedings. Sanchez argues that the state trial court should have ordered a competency hearing before

accepting his plea of guilty, that his sentence was excessive, and that he was deprived of his Sixth Amendment right to effective counsel. Magistrate Judge Peck's well-reasoned R & R rejected each of Sanchez's arguments in support of his § 2254 petition.

First, Magistrate Judge Peck concluded that each of Sanchez's arguments for why the trial court should have ordered a competency evaluation were meritless. Sanchez raised his competency claim in his *pro se* supplemental brief on direct appeal. (R & R at 21.) The First Department held that all of Sanchez's *pro se* claims were unpreserved, or were unreviewable because they are based on matters outside the record. (Id.) As an alternative holding, the First department rejected Sanchez's claims on the merits. (Id.) Because respondent did not argue that Sanchez's claims were unpreserved or unreviewable, Magistrate Judge Peck evaluated the First Department's rejection of Sanchez's claim on the merits, subject to the deferential review standard of the Antiterrorism and Effective Death Penalty Act ("AEDPA") (28 U.S.C. § 2254(d)). (Id.)

Magistrate Judge Peck reviewed Sanchez's medical records and concluded that they failed to show that Sanchez's mental functioning was so impaired that he was incompetent to enter a plea agreement. (Id. at 25.) The R & R observed that defense counsel represented to the state court that Sanchez was competent to enter a guilty plea. (Id. at 26.) In denying Sanchez's C.P.L. § 440.10 motion, Judge Carruthers observed that Sanchez's demeanor during the plea colloquy did not in any way suggest that he was incapacitated or disoriented, nor did his behavior at any other appearance suggest that he was incompetent to enter a plea agreement. (Id.)

Second, Magistrate Judge Peck concluded that Sanchez's excessive sentence claim was not cognizable on federal habeas review. (Id. at 27.) Because Sanchez's twenty-five

year sentence is within the permissible statutory range, no federal constitutional issue is presented. (Id. at 28.)

Last, Sanchez argued that his Sixth Amendment right to effective counsel was violated. He contends that his first attorney had a conflict of interest due to the fact that she represented the victim at some point prior to her representation of Sanchez. (Id.) Sanchez claims her assistance was ineffective because she failed to notify him of the grand jury proceedings and waived his presence while in custody. (Id. at 28-29.)

As with Sanchez's competency claim, the First Department found that his ineffective assistance claim was unpreserved or unreviewable, and in the alternative, ruled against Sanchez on the merits, and respondent declined to defend the First Department's ruling that Sanchez's claim was unpreserved or unreviewable. (Id. at 29)

Magistrate Judge Peck found Sanchez's arguments to be meritless. At the time of Sanchez's guilty plea, his allegedly conflicted counsel had been replaced by unconflicted counsel, and Sanchez does not claim that the counsel who represented him at the time of the plea rendered ineffective assistance. (Id. at 40.) His ineffective assistance of counsel claim thus does not relate to the voluntariness of his plea, and a knowing and voluntary guilty plea waives all nonjurisdictional defects in prior proceedings, including defects before the grand jury. (Id.)

II. This Court's Review:

The Court has engaged in a *de novo* review of the R & R, and the record on which it is based, to the extent that Sanchez has raised an objection. See Rule 72(b), Fed. R. Civ. P. The Court need not address in this Order all that it considered, but it has considered the entirety of the Objections.[1] The Court, as noted, adopts the R & R in full.

---

[1] The Court has reviewed the portions of the R & R to which no objections were made for clear error and found none. See Rule 72, Fed. R. Civ. P. advisory committee's note (1983).

Sanchez's objections relate to Magistrate Judge Peck's recommendation to reject Sanchez's arguments that the trial court should have ordered a competency evaluation before accepting his guilty plea. (Pet'r Objections at 1.) Sanchez alleges that Magistrate Judge Peck improperly applied AEDPA deference to the First Department's holding rejecting this challenge. (Id.) First, Sanchez argues that the First Department could not have rejected the challenge on the merits because its alternative holding found that the challenge involved matters outside the record that were unreviewable on appeal. (Id.) Sanchez further contends that a ruling on the merits of his competency claim was impermissible without independent fact finding, a hearing, and affirmations from Sanchez's former counsel and medical personnel. (Id. at 2-3.)

Sanchez argues that because the First Department's merits ruling was improper, only its holding that Sanchez's competency claims were unpreserved or unreviewable is valid. Sanchez contends that because he was not permitted to raise his competency claim on direct appeal he could not bring it until his initial post-conviction proceeding. (Id. at 1-2.) Sanchez argues that under these circumstances, because he was not provided counsel at his initial post-conviction proceeding, the Supreme Court's holding in Martinez v. Ryan, 566 U.S. 1 (2012) requires a federal habeas court to review his competency claim *de novo* rather than under a more deferential standard of review. (Id. at 2.)

The Court notes that due to the procedural posture of this case, Magistrate Judge Peck reviewed only the First Department's ruling against Sanchez on the merits, as respondent abandoned any argument that Sanchez's claims were procedurally barred. (R & R at 21.) Martinez is thus inapplicable to this case, as that case dealt with the procedural default of a habeas petitioner's constitutional claims rather than a federal habeas court's review of a state

court's ruling on the merits. See 566 U.S. at 5. Sanchez has indicated no authority supporting his contention that AEDPA deference is not due to the First Department's merits ruling.

Magistrate Judge Peck was correct to apply AEDPA deference to his evaluation of Sanchez's challenge of the First Department's ruling against Sanchez's competency claim on the merits. Though the First Department does not explain its reasoning, when "a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief," and AEDPA deference still applies. Grayton v. Ercole, 691 F.3d 165, 169, 174 (2d Cir. 2012); see also Zarvela v. Artuz, 364 F.3d 415, 417 (2d Cir. 2004) (applying AEDPA deference to habeas review of state court holding in which "[t]he Appellate Division found petitioner's claim to be unpreserved, and, in any event, without merit, and therefore reviewed the claim on the merits").

The Court agrees with Magistrate Judge Peck's conclusion that "Justice Carruthers' determination that no competency hearing was necessary was not an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, nor an unreasonable application of clearly established Supreme Court precedent." (R & R at 27 (internal quotation marks removed).)

As Magistrate Judge Peck explained, a review of Sanchez's medical records did not suggest he was incompetent at the time he entered the plea agreement. (Id. at 25.) Defense counsel represented to the court that Sanchez was competent, and Justice Carruthers believed Sanchez to be competent based on his observations of Sanchez in court when he pled guilty and during his numerous other court appearances. (Id. at 26.)

CONCLUSION.

The R & R is adopted in its entirety. (Dkt. 22). The Clerk is directed to enter judgment for the respondent and to close this case.

Petitioner has not made a substantial showing of the denial of a constitutional right and, accordingly, a certificate of appealability will not issue. See 28 U.S.C. § 2253; Blackman v. Ercole, 661 F.3d 161, 163-64 (2d Cir. 2011). This Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and *in forma pauperis* status is denied. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
April 13, 2017